LaWanda LOLLAR, Plaintiff-Appellant,

v.

WAL–MART STORES, INC.,
Defendant-Appellee.

Supreme Court of Tennessee,
at Nashville.

Feb. 21, 1989.

David E. Brandon, Nashville, for plaintiff-appellant.

Charles Trabue III, Gary M. Brown, Nashville, for defendant-appellee.

OPINION

DROWOTA, Chief Justice.

I

In this case, we re-examine our holding in *Woods v. Warren*, 548 S.W.2d 651 (Tenn. 1977) regarding the principles governing workers' compensation liability when an employee is injured en route to or from work.

The trial court granted the defendant's motion for summary judgment rather than trying the case upon the merits. The record before us is limited to the pleadings, the plaintiff's deposition, and the affidavits of plaintiff and a fellow employee.

The plaintiff worked part time at defendant's Wal–Mart Store in Davidson County. This particular store was located in a small shopping center, with several other stores adjoining it. The shopping center had a parking lot with lined and angled parking spaces.

According to affidavits and the plaintiff's deposition, which we view in the light most favorable to plaintiff for purposes of reviewing the summary judgment disposition, the defendant required its employees to park in an area at the outermost portion of the parking lot. The area, however, was not fenced or otherwise enclosed. There were no signs or other markings indicating that parking in this area was restricted to Wal–Mart employees. The entire lot was unrestricted and open to the general public.

On the evening of January 23, 1987, icy conditions existed on the entire parking lot. After clocking out and making a purchase, appellant proceeded on foot across the icy parking lot toward her automobile, which was parked in the designated area. En

route to her car, but before reaching the designated area, plaintiff slipped in the parking lot and broke her ankle.

Plaintiff brought suit to recover workers' compensation benefits as a result of her injury. Defendant moved for summary judgment on the sole ground that the plaintiff failed to satisfy the "special hazard" requirement of *Woods v. Warren*, discussed *infra*. The trial court granted summary judgment solely on this basis, and the plaintiff appealed.

Our review is limited to determining whether defendant is entitled to summary judgment. The defendant is entitled to summary judgment if there is no genuine issue of any material fact such that the defendant is entitled to judgment as a matter of law. Rule 56.02, Tenn.R.Civ.P.

## II

In order to be compensable under our workers' compensation statute, an injury must be one "arising out of and in the course of employment." Tenn.Code Ann. § 50–6–102(a)(4). The phrases "arising out of" and "in the course of" are not synonymous. "Arising out of" refers to the origin of the injury, while "in the course of" refers to the time, place and circumstances of the injury. *Knox v. Batson*, 217 Tenn. 620, 399 S.W.2d 765, 770 (1966).

The general rule in workers' compensation cases in Tennessee has been that an injury sustained en route to or from work is not compensable, since "the employee is not to be considered in the course of his employment until he has actually arrived at his place of employment ready to begin his activities in the employer's work...." *Smith v. Camel Mfg. Co.*, 192 Tenn. 670, 680, 241 S.W.2d 771, 775 (1951). We have, however, recognized exceptions to this general rule of non-liability. In *Woods v. Warren*, we reviewed a number of cases allow-

ing or discussing these exceptions and attempted to formulate a general rule governing them. We held that in order for an employee to recover for an en route injury, the employee must demonstrate that:

 a.  at the time of injury he was using a route required or furnished by the employer; ... and such route was on the premises of the employer, ... and

 b.  the use of the required route subjects the employee to a definite special hazard ... or

 c.  that the risks of travel are directly incident to the employment itself ...

*Id.* at 655 (citations omitted). We defined premises as "that part of the property where the employee actually works or which he is required to use for ingress and egress." *Id.*

Since that decision, we have addressed claims brought under the *Woods v. Warren* rule in 19 cases, 8 reported cases and 11 unreported cases.[1] These decisions along with the cases discussed in *Woods v. Warren* constitute a substantial body of law that we are now in a position to evaluate.

The aspects of the *Woods v. Warren* rule that have been most difficult of application are the "required route" and "special hazard" determinations.[2] Although conceptually distinct, the "required route" and "special hazard" issues are frequently raised together in particular cases and often involve overlapping facts. In discussing particular cases, we will address these two issues together where appropriate.

The required route rule is exemplified in *Mallette v. Mercury Outboard Sup. Co.*, 204 Tenn. 438, 321 S.W.2d 816 (Tenn.1959). The employer operated a floating marina off of a large barge on McKellar Lake. A floating bridge or ramp led from the barge to the east bank of the lake. Concrete steps were constructed from the water's edge to the top of the steep bluff on the

---

1.  See appendix for a listing of the reported and unreported cases. Although as a general rule we do not approve of the citation of unreported opinions, we find it necessary in this case to refer to certain unreported decisions.

2.  We do not re-examine or otherwise question exception (c) of *Woods v. Warren*, allowing re-

covery when "the risks of travel are directly incident to the employment itself." This requirement is wholly separate from the other requirements. See, e.g., *Hudson v. Thurston Motor Lines, Inc.*, 583 S.W.2d 597, 601 (Tenn. 1979).

east bank. A parking lot was located on top of the bluff. The employee slipped on these steps while leaving work resulting in serious injuries.

The employer's lease included the barge, the ramp and the parking lot. The steps, however, were constructed and maintained by the City but their sole purpose was to serve the employer's business. The Court found the accident compensable, reversing the lower court, because the steps were the only reasonable means of getting to and from the place of employment on the barge.

*Bennett v. Vanderbilt University*, 198 Tenn. 1, 277 S.W.2d 386 (1955) is a leading case for failure to meet the required route rule. The employee tripped and fell in a parking lot maintained by the employer for the use and convenience of the employees. The employee was permitted but not required to use the parking lot. There were several other parking lots which she could have used. She selected her own parking place and her own route, and the Court denied benefits. The Court distinguished property and premises of the employer for compensation purposes:

> While all property owned by an employer may be likewise called "premises" in general usage, but it is obvious from our cases, that "premises" under our compensation statute means the part of the property where the employee is to do his work, including that part which he is required to use for ingress and egress.

198 Tenn. at 7, 277 S.W.2d at 388.

The special hazard requirement is perhaps most clearly illustrated in *Moore v. Cincinnati N.O. & T.P. Ry. Co.*, 148 Tenn. 561, 256 S.W. 876 (1923). The plaintiff employee of defendant's railroad yard was killed by a locomotive after his shift had ended and while he was in the process of leaving the yard, but before he had left the premises. The employer had argued that the plaintiff had taken a course of exit that was unnecessarily hazardous. The Court rejected this argument, however, pointing out that there were no means of egress that would not have subjected plaintiff to the special hazards and dangers of a rail yard. In the most recent case dealing with special hazards, this Court held that a special hazard may not only be a dangerous or defective physical condition on the premises, but may occur on an employer's premises by reason of traffic congestion. We concluded that the employee was using a required route and was "exposed to a special hazard, not common to the members of the public generally." *Sewell v. American Uniform Co.*, 759 S.W.2d 415, 416 (Tenn. 1988).

In *Woods v. Warren, supra*, the plaintiff worked in an apartment complex where she also lived. It was her practice on most days to walk to the manager's office, located at the other end of the complex from her residence, and clock in. On the day of the accident, however, snowy and icy conditions generally prevailed in the area. She drove her vehicle to the office and parked in a space of her own selection, which she was permitted, but not required, to do. After exiting her car, she fell on the icy sidewalk.

We held that although plaintiff was on the employer's premises at the time of her injury, she had several parking lots available to her and several routes she could have chosen. As in *Bennett v. Vanderbilt University*, she was not pursuing a required route, but one of her own choice.

We also held that she failed to demonstrate a special hazard since the snowy and icy conditions "were common to the general public and not peculiar to the nature of the employment or to the conditions under which that employment was required to be performed." 548 S.W.2d at 656. Our holding did not clearly state whether the special hazard was lacking because there were snowy and icy conditions prevailing generally, or because the general public had access to the area of the accident. The opinion in *Woods* made no reference to the fact that the parking lot and sidewalk were accessible to the general public.

This was clarified in *Frazier v. Normak Intern.*, 572 S.W.2d 650 (Tenn.1978). The plaintiff slipped on ice in an alley used to get into the employer's building in a warehouse complex. The alley was closed to

the general public, though three other companies used the alley. We reversed the trial court and held that the alley was a required route and that notwithstanding the generally icy conditions, the hazard created by the ice on this particular alley was not a general one, but was peculiar to the employees that used it. We distinguished *Woods* by noting that the parking lot in *Woods* was open to the general public.

*Frazier* raises the question of what constitutes premises which are closed to the public. Our cases that have at least implicitly dealt with this question are not altogether consistent.

In a case we have already discussed, *Mallette v. Mercury Outboard Sup. Co.*, *supra*, the employer sold gasoline and other motor boat supplies from a large barge in the middle of a lake. It also provided space for boat owners to dock and keep their boats. The Court found as a matter of law that the means of ingress and egress were limited to patrons of the business and employees, not members of the general public, and recovery was allowed.

In *Quality Care of Nashville v. Waller*, 584 S.W.2d 779 (Tenn.1979), the plaintiff slipped on ice on a parking lot to a nursing home on a generally snowy and icy day. We affirmed recovery because "only employees and legitimate visitors were allowed" to park in the lot; while the general public was excluded.

A contrary result, however, was reached in *Jones v. Ridgewood Health Care Center, Inc.*, 650 S.W.2d 375 (Tenn.1983). The plaintiff, as in *Quality Care*, worked at a nursing home and injured herself in a parking lot when she fell on ice. In affirming the denial of recovery, we noted that the parking lot was "open to and used by employees and guests alike, and was not a restricted area for the exclusive use of employees." *Id.*, at 377. These facts do not differ appreciably from those in *Quality Care* or *Mallette*. Our decision, however, was governed by the following observations:

The issue in this case, as in most cases dealing with the required route and special hazard, is in the final analysis factu-

al rather than legal. It must be remembered that we review the decisions of the trial courts in workers' compensation cases under a material evidence rule, T.C.A. § 50–1018. Therefore, if there is material evidence to support the factual conclusions reached by the trial judge, we must affirm as to those issues.

*Id.*

In another icy parking lot case, *Dunahoo v. Firestone*, unpublished, November 3, 1986 at Nashville [1986 WL 12371], the employer's affidavits on summary judgment stated that the parking lot "was available for use by visitors to the plant or any other members of the public having any proper occasion to be on the premises." The trial court granted summary judgment for the employee. Reversing the summary judgment disposition and remanding for trial, we stated that the employer's affidavits were material evidence that no special hazard existed. This result would also appear to be *contra* to *Quality Care*. Again, however, the issue was primarily factual and review limited.

More on point to the instant case is *Jenkins v. Martin*, unpublished, December 6, 1982 at Knoxville, another icy parking lot case. Defendant owned a shopping center and its parking lot, and operated a variety store in the shopping center where plaintiff worked. The shopping center parking lot was open to the employees and customers of the business. We held these facts constituted material evidence that there were no special hazards and affirmed the denial of recovery.

In the "required route" cases, the distinction noted in *Woods v. Warren* between required and chosen routes has been easier to state than to apply with consistency. Easiest of application are cases such as *Quality Care of Nashville v. Waller*, *supra*, where the employer expressly instructed the plaintiff to enter the premises through a particular entrance in a wall surrounding the employer's building, and then to enter the building through a designated door. Plaintiff slipped in the parking lot between the wall and the door and recovery was allowed.

Following cases such as *Bennett v. Vanderbilt University, supra,* and *Woods v. Warren, supra,* it would seem that a clear rule should emerge denying compensation where there are multiple parking lots and/or entrances where the employee has a choice of routes. To some extent, this has been the case. In *Jones v. Ridgewood Health Care Center, Inc., supra,* the plaintiff, as in *Quality Care,* worked at a nursing home. Defendant maintained two parking lots, one at the front of the new building and one at the rear. There was more than one door available to enter the building. Plaintiff slipped on ice while walking to her car in the rear lot. We affirmed denial of benefits holding that these facts constituted material evidence that plaintiff had failed to show a required route.

We have also held that plaintiffs failed to meet the "required route" test in three unpublished cases involving multiple parking lots and/or entrances, without express instructions regarding routes of ingress or egress. *Gabel v. Liberty Mutual Ins. Co.,* unpublished, January 30, 1984 at Jackson; *Smith v. United States Shoe Corporation,* unpublished, April 26, 1982, at Nashville; *Thornton v. Standard Knitting Mills, Inc.,* unpublished, August 4, 1980, at Knoxville. In all three cases, the trial court's denial of recovery was affirmed under the material evidence rule.

In fact, however, the "required route" rule has not proved that easy to apply with consistency in the multiple parking lot and/or entrance context. In *Potts v. Heil–Quaker Corporation,* 482 S.W.2d 135 (Tenn.1972), the plaintiff-employee, a welder, could leave defendant's plant only through a guard gate. The welding building where he worked, however, had four possible exits, any of which Plaintiff was free to use. The Plaintiff was injured while leaving work when he slipped and fell on a wet, oily surface in the open space of about 150 feet between the welding building and the exit gate. The employer argued that since the Plaintiff could have left by any one of four exits, he was not required to take a particular route through the open space. The Court rejected the argument for the following reasons:

The "required route" rule is not so inflexible as to allow an employer to designate exact geographic limitations to a particular route in order to escape liability for hazards existing a few feet on either side of the given route. Nor is it intended to allow an employer to avoid liability by granting an employee discretion of movement through an area restricted by boundaries. The mere fact the employee had a choice of path within a reasonable defined area, a variance of which may or may not subject him to "special hazards" is insufficient to take him out of the "required route" rule.

*Id.,* at 138.

In *Aluminum Company of America v. Baker,* 542 S.W.2d 819 (Tenn.1976), the employer maintained two parking lots for its employees. Each lot had one exit gate through which anyone entering the plant had to pass. The plaintiff stepped into a hole in one of the lots, injuring himself. We held that the "required route" exception was met without discussion of the significance of multiple parking lots, and affirmed the trial court under the material evidence rule.

In *Crutchfield v. Gulf Insurance Company,* unpublished, February 28, 1983, at Knoxville, the plaintiff fell on the steps at the front of the building as she left the front door. She had not been instructed to leave by that door, and the employer argued that she had a choice of routes in leaving the building. The proof showed that the employees were required to clock out when leaving, and that the time clock was at the front entrance. We held that this constituted an "implicit invitation" for employees to use the front entrance, and affirmed the trial court's award of benefits.

Finally, and even more difficult to reconcile with earlier multiple lot cases is *Lovell v. Nashville Electric Service,* 696 S.W.2d 2 (Tenn.1985). There were three employee parking lots with no evidence that employees were required to park in a particular lot. A fence with three exits enclosed the parking lot which plaintiff used. As she

exited the lot she slipped on ice and fell, breaking her ankle. We affirmed the trial court's award of benefits under the material evidence rule for the reason that the lot on which she parked and the exit which she used were the ones closest to her work station. Here the required route concept is stretched almost beyond recognition. *Lovell* appears to allow recovery when the employee, faced with several possible routes, chooses the shortest and/or most convenient route.

### III

The rule employed by nearly all jurisdictions other than Tennessee is that injuries occurring while an employee is en route to or from work are compensable if they occur on the employer's premises. 1 Larson, Workmen's Compensation Law § 15.11 (1985). *Larson* lists only Kentucky and Tennessee as having judicially rejected or narrowed the premises test. *Id.* at f.n. 2. Kentucky's approach, however, appears to be broader than Tennessee's. Kentucky employs an "operating premises" theory with liability based on the employer's control of the area. *K–Mart Discount Stores v. Schroeder*, 623 S.W.2d 900, 902 (Ky. 1981). The fact that means of ingress or egress are also used by the general public does not preclude liability. *Smith v. Klarer Company*, 405 S.W.2d 736 (Ky.1966).

Further, the great majority of jurisdictions consider parking lots owned or maintained by the employer for employees to be part of the premises. 1 A. Larson, *supra,* at § 15.42(a); *Texas Emp. Ins. Ass'n. v. Dean*, 604 S.W.2d 346, 349 (Tex.Civ.App. 1980).

There is nothing in the language of our statute that requires a different rule in Tennessee. Our cases, after all, are only an attempt to give meaning to the phrase "in the course of employment." According to *Larson*, forty-two states and the Longshoreman's and Harbor Worker's Compensation Act, 33 U.S.C. §§ 901 et seq., employ the language, "arising out of and in the course of employment," which is identical to the language in our statute. 1 *Larson, supra*, § 6.10 (1985). The statutes of for-

ty-seven states contain the language, "in the course of employment." *Id.* We are, of course, not bound by the decisions of courts in other jurisdictions regarding this language. But the all-but unanimous agreement on the proper interpretation of language identical to that in our own statute is entitled to our respectful consideration.

We have long been aware that the Tennessee rule in en route cases is a minority one. In *Smith v. Camel Mfg. Co.*, 192 Tenn. 670, 241 S.W.2d 771, 774 (1951), we rejected the majority rule of premises liability, stating:

> "It is apparent from the foregoing quotation [from *Little v. Johnson City Foundry & Mach. Co.*, 158 Tenn. 102, 11 S.W.2d 690 (1928)] that this Court has rejected the general statement that an accident suffered by an employee in going to and from work was compensable if it occurred on the employer's premises, or so near the place of employment as reasonably would be regarded as in effect at the place, unless there were some special considerations as the requirement of use of a special road or way, or if the manner of travel or the way of travel was within the contemplation of the contract of employment."

In *Bennett v. Vanderbilt University*, 198 Tenn. 1, 277 S.W.2d 386, 388 (1955), we justified our departure from the majority rule as an attempt "to lay down a workable rule." Our opinion in *Woods v. Warren* was an attempt to bring together in one encompassing rule the controlling principles of law which had emerged from our opinions. *Id.*, 548 S.W.2d at 653.

As our review of the case law indicates, our rule has not proved a workable one. We acknowledged as much when five years after *Woods v. Warren*, we wrote in an unpublished case, *Smith v. United States Shoe Corporation*, April 26, 1982, at Nashville, that "[i]t is, of course, difficult to reconcile the results of all the many cases on this subject."

One source of the inconsistency is that in deciding en route cases this Court as well as the trial courts have been guided by the

longstanding rule that the workers' compensation statutes are to be liberally construed and that doubt should be resolved in favor of the employee. *See, e.g., Knox v. Batson,* 217 Tenn. 620, 399 S.W.2d 765, 772 (1966); T.C.A. § 50–6–116. This rule stands in tension with the general rule of non-liability characterizing en route cases.

But primarily the inconsistent results we have reached are the result of a reviewing standard which required us to affirm the trial court if there was material evidence to support the factual conclusions reached by the trial judge, T.C.A. § 50–6–225 (1983 repl.). The material evidence rule in conjunction with our determination that issues involving required route and special hazard are primarily factual rather than legal, *Jones v. Ridgewood Health Care Center, Inc.,* 650 S.W.2d 375, 377 (Tenn.1983), constrained us to let stand conflicting trial court rulings on factually similar cases.

We no longer review workers' compensation cases under the material evidence standard. For accidents occurring on or after July 1, 1985, the standard of review of the trial court's findings of fact is "de novo upon the record of the trial court accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." T.C.A. § 50–6–225(e) (1988 Supp.); *Alley v. Consolidation Coal Co.,* 699 S.W.2d 147, 147–48 (Tenn.1985). "This standard of review differs from that previously provided and requires this Court to weigh in more depth factual findings and conclusions of trial judges in workers' compensation cases." *Humphrey v. Witherspoon, Inc.,* 734 S.W.2d 315, 315 (Tenn.1987). One of the purposes of *de novo* review is to provide more consistent statewide treatment of worker's compensation cases that are factually similar.

The abolition of the material evidence rule presents the Court with a unique opportunity to re-evaluate the rule in *Woods v. Warren.* We can of course continue to adhere to *Woods v. Warren.* Required as we now are to weigh in more depth findings of fact, we would have the task of reaching more consistent results in cases which now are often irreconcilable. We would thus preside over the development of a body of case law from which further controlling rules or principles or precedents might emerge providing greater rationality in the application of *Woods v. Warren.*

The cases decided under the material evidence rule will be of some assistance in this process. Certain similar patterns of fact have emerged frequently enough that it is possible to develop principles governing liability beyond those in *Woods v. Warren.* For instance, since *Frazier v. Normak Inter. Co., supra,* it is well-settled that a worker who is injured when he or she slips on ice or snow is not precluded from benefits solely by virtue of the fact that snowy and icy conditions generally prevail.

These cases, however, often have specific and unique facts that make the development of generalized principles or controlling precedents difficult. Snow and ice at least form a factual common denominator out of which to construct a principle. The facts on the required route cases, on the other hand, are peculiarly case specific. The number and configuration of parking lots and means of ingress and egress are rarely the same from one case to the next. Except when express instructions are given, as in *Quality Care,* it will be difficult to arrive at generalized statements or principles regarding liability to guide the lower courts and the litigants. Stated another way, there is almost an inherent unworkability to the *Woods v. Warren* rule, that even de novo review cannot cure.

The special hazard cases present another type of problem. In order to meet the special hazard requirement, the employee must usually show that only employees and legitimate visitors have access to the area of the hazard. With manufacturing facilities, this requirement is often not difficult to meet. Because of the nature of such facilities and the fact that they are frequently located away from commercial business districts, there usually is no reason for persons other than employees and a limited number of legitimate visitors, such as customer or sales representatives, to use company parking lots.

If the business is a retail establishment, however, it is important that parking be provided to the general public which constitutes its market. Thus in shopping center cases where the employee and the customer use the same parking lot, the employee will never be able to show a special hazard. In both situations, the employer has provided parking for its employees and its customers, yet the injury in the manufacturing plant's parking lot is in the course of employment while injury in the retail stores parking lot is not. Even if the special hazard rule is workable, the operation of the rule here cannot be justified in terms of giving content to "in the course of employment."

In our view, the *Woods v. Warren* rule, understood as encompassing the cases leading up to *Woods v. Warren* as well as the cases following it, has failed as a test for determining when *en route* injuries are "in the course of employment." Faced with the prospect of increased litigation on this issue under *de novo* review, we think the better approach is to frankly admit the inequities that have resulted from Tennessee's unique minority rule.

We hold today that a worker who is on the employer's premises coming to or going from the actual work place is acting in the course of employment. We further hold that if the employer has provided a parking area for its employees, that parking area is part of the employer's premises regardless of whether the lot is also available to customers or the general public. We agree with the statement of the New Mexico Supreme Court when it overruled its narrow "going-and-coming" rule, that

> [i]n aligning ourselves with every other jurisdiction by adoption of the premises rule, we simply recognize that the "course of employment" includes not only the time for which the employee is actually paid but also a reasonable time during which the employee is necessarily on the employer's premises while passing to or from the place where the work is actually done.

*Dupper v. Liberty Mutual Ins. Co.*, 105 N.M. 503, 734 P.2d 743 (1987).

We think this rule is more in keeping with the purposes of our worker's compensation statute and will be easier of consistent application than the rule in *Woods v. Warren*. Of course, any attempt to draw a line, such as premises liability, will eventually engender difficult cases which are close to one side of the line or the other. But we think this rule will give clearer guidance to litigants than the rule in *Woods v. Warren* and reduce the litigation in this area.

## IV

Because summary judgment was granted under the rule of *Woods v. Warren*, it will be necessary to remand for further proceedings in accordance with this opinion. Whether the plaintiff can recover under the rule we have set out today depends on the facts developed on remand.

The trial court's order granting defendant's motion for summary judgment is reversed and the case remanded for further proceedings. Costs on appeal are taxed to defendant.

FONES, COOPER, HARBISON and O'BRIEN, JJ., concur.

## APPENDIX

Since our decision in *Woods v. Warren*, 548 S.W.2d 651 (Tenn.1977), this Court has decided the following en route cases:

*Sewell v. American Uniform Co.*, 759 S.W.2d 415 (Tenn.1988);

*Goins v. Kayser–Roth Hosiery, Inc.*, 751 S.W.2d 423 (Tenn.1988);

*Lovell v. Metropolitan Government*, 696 S.W.2d 2 (Tenn.1985);

*Jones v. Ridgewood Health Care Center, Inc.*, 650 S.W.2d 375 (Tenn.1983);

*Harper v. Daun Ray Casuals, Inc.*, 596 S.W.2d 822 (Tenn.1980);

*Quality Care of Nashville v. Waller*, 584 S.W.2d 779 (Tenn.1979);

*Kellwood Co. v. Gibson*, 581 S.W.2d 645 (Tenn.1979);

*Frazier v. Normak Intern.*, 572 S.W.2d 650 (Tenn.1978);

*Dunahoo v. Firestone Tire and Rubber Co.*, filed November 3, 1986, at Nashville;

*Pearcy v. Thompson/Salant,* filed December 31, 1984, at Jackson;

*Gabel v. Liberty Mut. Ins. Co.*, filed January 30, 1984, at Jackson;

*Crutchfield v. Gulf Insurance Co.*, filed February 28, 1983, at Knoxville;

*Goins v. Rogers,* filed February 14, 1983, at Knoxville;

*Tutor v. Sears, Roebuck & Co.*, filed December 6, 1982, at Jackson;

*Jenkins v. Martin,* filed December 6, 1982, at Nashville;

*Smith v. United States Shoe Corp.*, filed April 26, 1982, at Nashville;

*Bryant v. State Farm Fire & Cas. Co.*, filed September 21, 1981, at Knoxville;

*Langston v. Southern Athletic–Bike, Inc.,* filed June 29, 1981, at Knoxville;

*Thornton v. Standard Knitting Mills, Inc.*, filed August 4, 1980, at Knoxville.