FILED

December 11, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 9:18 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | |
|---|---|
| MELISSA DUCK, <br> Employee, <br> v. <br><br> COX OIL CO., <br> Employer, <br><br> And <br><br> TECHNOLOGY INSURANCE CO., <br> Insurance Carrier. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Docket No.: 2015-07-0089 <br><br> State File No.: 37887-2015 <br><br> Judge Allen Phillips |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS
## (RECORD REVIEW ONLY)

---

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by the employee, Melissa Duck, pursuant to Tennessee Code Annotated section 50-6-239 (2014). Ms. Duck requested the Court render its decision based upon a review of the case file without an evidentiary hearing. Cox Oil Co. did not object to this request.[1] This Court finds that it requires no additional information to determine whether Ms. Duck is likely to prevail at a hearing on the merits of the claim. Accordingly, pursuant to Rule 0800-02-21-.14(1)(c)(2015) of the Tennessee Compilation Rules and Regulations, the Court decided the issues in this case upon a review of the written materials and without benefit of an evidentiary hearing.

The present focus of the case is Ms. Duck's request for medical evaluation of alleged injuries sustained in a fall. The central legal issue is whether the injury occurred in the course and scope of her employment. For the reasons set forth below, the Court

---

[1] By making an on-the-record determination, the Court makes no decision as to the admissibility of the information submitted in the case file absent an objection from a party. The Court notes in this case the parties did not raise any objection to admissibility of any information in the file; therefore, the Court reviewed and considered the entire case file in making its determination.

1

finds Ms. Duck has shown she is likely to prevail at a hearing on the merits in establishing that her injury occurred in the course and scope of her employment, thus entitling her to medical benefits.

## History of Claim

Ms. Duck is a fifty-seven-year-old resident of Gibson County, Tennessee. She worked for Cox Oil Co. as a clerk at a convenience store. According to Cox, Ms. Duck's duties included working the cash register and cleaning ice cream freezers. The parties do not dispute that Ms. Duck fell in water that collected on the floor near one of the store's freezers on March 22, 2015. Though the events immediately before her fall are somewhat disputed, those differences are not outcome-determinative.

The parties agree that Ms. Duck reported for work on March 22 at her scheduled time of approximately 2:00 PM. She claims to have then engaged in a conversation with Jason Stanford, the assistant store manager and her supervisor, regarding her duties for the day.[2] Via affidavit, Ms. Duck testifies that, "shortly [after arriving at work], I told Mr. Sanders [sic] that I was quitting." (Ex. 1 at 1.) When leaving, she fell in water around the freezer and "felt pain in [her] low back, left arm and shoulder, and the back of [her] head." *Id.* at 2. She sought medical attention at a local hospital "a few weeks or so after the injury." *Id.* On June 5, 2015, she received a notice of denial from Cox's insurance company. As of the date of filing the Petition for Benefit Determination (PBD), she still has headaches and pain in the affected body parts. She claims inability to perform the type of physical activity required by her job at Cox and seeks a medical evaluation.

For its part, Cox submitted the affidavit of Mr. Stanford, who states Ms. Duck "clocked in" at 2:03 PM while he was cleaning the freezer. He had placed a "Wet Floor" sign and was using a hose. While cleaning the freezer, he asked Ms. Duck to "work" the main register. She refused, merely stating she did not want to work the register. She then went to the rear of the store and called someone on her cell phone. When she returned, "after grabbing a soda," she moved the sign and proceeded to the front counter. Mr. Stanford asked her to complete the freezer cleaning so that he might work the register. Ms. Duck refused to do so, stating that, "she should not have to clean other people's messes." (Ex. 2 at 2.) When she began collecting her belongings, Mr. Stanford asked her if she were leaving, and she replied, "yes. *" Id.* Mr. Stanford then asked if she were quitting, to which she again responded, "yes." *Id.* As she was leaving, she fell in the water around the freezer. Mr. Stanford stated that, "she then got up and cursed at me and told me that she was going to sue me." *Id.* Ms. Duck then left the store.

---

[2] Ms. Duck refers to Mr. Stanford as "Jason Sanders," but it is clear in context that she is referring to the same person.

Jacob Flowers, the store manager, testified for Cox via affidavit. He confirmed that Ms. Duck was to work on both March 23 and 24, 2015, the two days following her fall, but that she did not appear. (Ex. 3 at 2.) "On or about March 30, 2015," Ms. Duck reported to Mr. Flowers that Mr. Stanford had been rude to her on March 22 and such was why she had quit. Mr. Flowers testified, "I told Ms. Duck that I could not help her at this point since the situation occurred over a week ago and she had walked out on the job." *Id.*

Ms. Duck filed a PBD on May 19, 2015. She listed the disputed issue as, "the insurance adjuster claims that there will be no workers' comp. or liability filed." (T.R. at 1.) She described her job as: "Clerk-quit minutes before falling" and described her injury as, "[s]lipped on the flat panel laying in water on the floor." *Id.* Following a failed mediation, the mediator assigned to the case filed a Dispute Certification Notice. Ms. Duck did not, within the required sixty-day period, file a request for either an initial or expedited hearing. After a show cause hearing, the Court allowed Ms. Duck additional time in which to file a hearing request, and this request followed.

### Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[3] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits.[4] *Id.*

---

[3] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

[4] In this case, Cox asserts that, "the employee requesting an expedited hearing has the burden of establishing the existence of a compensable work injury under Tennessee's Workers' Compensation Law." (Cox's Brief at 3.) It then cites Tennessee Code Annotated section 50-6-239(c)(6), which provides, "unless the statute provides for a different standard of proof, at a hearing the employee shall bear the burden of proving each and every element of the claim *by a preponderance of the evidence.*" (Emphasis added by Court). To the extent that Cox argues Ms. Duck is required to establish the required elements of her case by a preponderance of the evidence, the Court disagrees.

3

As agreed by the parties, the sole issue for consideration is purely one of law, to-wit, did Ms. Duck's injury occur in the course and scope of her employment? Based upon the evidence submitted, the Court concludes that Ms. Duck would likely prevail on this issue at a hearing on the merits and, therefore, she is entitled to medical evaluation of her alleged injuries.

"In the course of" employment refers to the time, place and circumstances of an injury. *Hill v. Eagle Bend Mfg., Inc.*, 942 S.W.2d 483, 487 (Tenn. 1997). An injury occurs in the course of employment "when it takes place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto." *Blankenship v. Am. Ordnance Sys., LLC*, 164 S.W.3d 350, 354 (Tenn. 2005). Notably, the Tennessee Legislature amended the statutory language regarding "course of employment" in the 2013 Reform Act to include the phrase "in the course *and scope* of employment." Tenn. Code Ann. § 50-6-102(13) (2014)(emphasis added). The previous version of the statute defined injury only as, "arising out of and *in the course* of employment" with no mention of "scope." Tenn. Code Ann. § 50-6-102(12) (2012)(effective until July 1, 2014)(emphasis added).

Despite the change in statutory language, the Court notes our Supreme Court has long used the terms "course" and "scope" both interchangeably and as descriptive of the required causal connection between an injury and the employment. *See Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). As noted, long-standing authority states "in the course of" refers to the time, place, *and circumstances* of an injury. In a recent case, citing *Orman*, our Supreme Court stated:

> The phrase "in the course of" refers to time, place, and circumstances, and "arising out of" refers to cause or origin." An injury by accident to an employee is in the course of employment if it occurred *while he was performing a duty he was employed to do*; and it is an injury arising out of employment if caused by a hazard incident to such employment." Generally, an injury arises out of and is in the course and scope of employment if it has a rational connection to the work and occurs *while the employee is engaged in the duties of his employment*.

*Plotner v. Metal Prep.*, No. W2012-02595-SC-WCM-WC, 2014 LEXIS 677, at *7 (Tenn. Sept. 29, 2014) citing *Orman*, 803 S.W.2d at 676. (Emphasis added).

In essence, the term "course and scope of employment" encompasses the idea that an injury must occur both at a time and place where the employee is expected to be *and*

---

Instead, as stated, the standard applicable herein is whether Ms. Duck has come forward with sufficient evidence for the Court to determine that she is likely to prevail at a hearing on the merits.

4

when doing something incidental or rationally-connected to the work. Thus, this Court must determine whether Ms. Duck satisfied both the location and activity elements of the test when injured immediately after quitting her job.

In making its analysis, the Court notes both parties point to *Lollar v. Wal-Mart Stores, Inc.*, 767 S.W.2d 143 (Tenn. 1989). Ms. Duck cites the case for the proposition that a worker who is in on an employer's premises, coming or going to the actual workplace, is acting within the course of employment. *Lollar*, 767 S.W.2d at 150. Cox counters that the dispositive language is "a *worker* who is on the employer's premises." *Id.* (Cox's emphasis). It follows, according to Cox, that because Ms. Duck terminated her employment before she fell, *Lollar* does not apply; Ms. Duck was no longer an employee and, therefore, could not have been in the course of her "employment."

Ms. Duck argues *Tolley v. Sossner Sales Corp.*, No. 03S01-9504-CH-00038, 1996 Tenn. LEXIS 7 (Tenn. Workers' Comp. Panel Jan. 10, 1996) is persuasive. There, a laid-off employee returned to the employer's premises to pick up his paycheck. While doing so, he sustained an injury when he fell on icy steps. Notably, that employee was on layoff status "for disciplinary reasons resulting from an event at work." *Id.* at *2. The Panel first noted the mere presence of an employee at the place of employment will not alone result in the injury being considered as arising out of the employment, *Id., citing Rogers v. Kroger Co.*, 832 S.W.2d 538, 541 (Tenn. 1992), but also found it is not necessary that the employee be at her work station in order to have a compensable injury. *Id.* at *3, *citing Carter v. Volunteer Apparel, Inc.*, 833 S.W.2d 492, 495 (Tenn. 1992). Importantly, the Panel noted our statute at the time did not define "in the course of" as requiring the employee to be doing something beneficial for her employer when injured, but, instead, "the question focuses on whether the activity bears a reasonable relationship to the employment." *Id.* at *4. In reversing a denial of benefits, the Panel found an employee on the premises "solely for the purpose of receiving compensation is engaged in such an integral part of the employment relationship that an injury sustained . . . at the time . . . arises out of and in the course of employment." *Id.* at * 6.

Ms. Duck also cites *Manuel v. Davidson Transit Organization*, No. M2007-01580-CV-R3-WC, 2008 Tenn. LEXIS 624 (Tenn. Workers' Comp. Panel Sept. 24, 2008) as supportive of her position. There, the employee suffered injuries in an automobile accident while returning from a physical therapy appointment necessitated by a work injury. Though the employer no longer employed the claimant at the time of the accident, the Panel held the injury compensable because the medical treatment was necessitated by a work injury and "was a partial continuation of the employment relationship." *Id.* at *4.

Cox disputes the applicability of *Tolley* because the employee there remained employed at the time of injury, but merely on lay-off status. This, according to Cox's argument, is in contrast to Ms. Duck having terminated her employment prior to being injured. Likewise, Cox argues that *Manuel* is distinguishable because Ms. Duck's

5

resignation severed any continued "employment relationship" as was present when the former employee in *Manuel* was seeking medical treatment. (Cox Brief at 3.)

This Court finds *Tolley* and *Manuel* are best confined to their specific facts; namely, an employee on lay-off status remains in the course of employment when retrieving wages (*Tolley*); and a former employee remains in the course of employment when injured while seeking medical treatment for a compensable injury (*Manuel*). However, as stated in *Tolley,* the proper focus is upon whether the activity at the time of injury bears a reasonable relationship to the employment.

In view of the above principle, this Court finds that an employee who is leaving the premises of an employer immediately after terminating her employment remains in the course and scope of her employment for a reasonable time thereafter. Here, though far from demonstrating exemplary behavior, Ms. Duck was on Cox's premises for a brief period simply to exit the store. The Court respectfully disagrees with Cox's assertion that the logic of *Lollar* does not apply; defining the word "worker" as only a *current* worker is too narrow for the coverage formula of the law regarding injuries within the course and scope of employment. Ms. Duck was in the course of employment when exiting the premises and, pursuant to the "reasonableness" test cited in *Tolley,* her exiting the employer's premises immediately after quitting bears a reasonable relationship to her employment.

This finding is supported by Professor Larson in his authoritative treatise wherein he states, "[c]ompensation coverage is not automatically and instantaneously terminated by the firing or quitting of the employee. The employee is deemed to be within the course of employment for a reasonable period while winding up his or her affairs and leaving the premises." 2 Lex K. Larson, *Larson's Workers' Compensation* § 26.01 (Matthew Bender, Rev. Ed.) He does concede, however, that "[t]he difficult question is: what is a reasonable period?" *Id.* This Court finds that walking out of the employer's premises immediately after quitting the employment constitutes a reasonable period. This finding is supported by authority from other jurisdictions.[5] *See Price v. R. & A. Sales,* 773 N.E.2d 873 (Ind. Ct. App. 2002)(injury was in scope of employment when employee fell down steps as he was leaving the premises minutes after termination); *Leonhardt Enter. v. Houseman,* 562 P.2d 515 (Okla. 1977)(employee was in course of employment when walking out after quitting over wage dispute as such was a reasonable period to finish his affairs and leave premises); *Liberty Northwest Ins. Corp.,* 776 P.2d 588 (Or. Ct. App. 1989)(injury was

---

[5] Cox relies upon *Marazas v. WCAB,* 97 A.3d 854 (Pa. Commw. Ct. 2014) where the court deemed an injury compensable when an employee, who recently quit, suffered injury while following the employer's direction to remove his personal belongings from a company truck. Because, unlike Ms. Duck, that employee was acting at the employer's direction, the claim was deemed compensable. Given the findings here of Ms. Duck suffering her fall within a reasonable time of quitting, the Court finds the specific facts of *Marazas* inapplicable. It is worthy to note, however, that the *Marazas* Court recognized that termination of the employment relationship does not bar the recovery of benefits; acting at the employer's direction was simply the factual finding supporting, but not controlling, the result in that case.

6

compensable when employee fell in parking lot as he was leaving after being terminated).

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Duck's request for medical benefits is granted. Cox Oil Co. shall provide to Ms. Duck a panel of physicians from which she may choose a physician to evaluate her alleged injuries.

2. This matter is set for a Status Hearing on **Thursday, February 25, 2016, at 9:00 a.m.**

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 11th day of December, 2015.**

**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

Status Hearing:

A Status Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call 731-422-5263 or toll-free at 855-543-5038 to participate.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2.  File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3.  Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4.  The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5.  The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6.  If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if

8

any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

The Court reviewed the following documents and designates these documents as the Technical Record:[6]

1. Petition for Benefit Determination (PBD), filed May 19, 2015
2. Dispute Certification Notice (DCN), filed June 25, 2015
3. Request for Expedited Hearing (REH), filed October 29, 2015
4. Employee's Brief in Support of REH (with supporting authority); and
5. Employer's Brief in Opposition to REH (with supporting authority).

The Court reviewed the following documents in reaching its decision and designates the documents as Exhibits solely for ease of reference by the Court:

1. Affidavit of Melissa Duck;
2. Affidavit of Jason Stanford;
3. Affidavit of Jacob Flowers;
4. First Report of Work Injury (C-20);
5. Notice of Denial (C-23);
6. Timesheets of Ms. Duck;
7. Separation Notice;
8. Wage Statement;
9. Panel of Physicians; and
10. Medical Records of West Tennessee Healthcare.

---

[6] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order For Medical Benefits was sent to the following recipients by the following methods of service on this the 11th day of December, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Charles L. Holliday, Esq. Counsel for Employee | | | X | chuckh@garretylaw.com |
| Colleen K. Horn, Esq., Counsel for Employer | | | X | chorn@wimberlylawson.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**