RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0390P (6th Cir.)
File Name: 01a0390p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ROGER L. McCLUNG,
        *Plaintiff-Appellant,*

        *v.*

WAL-MART STORES, INC.,
        *Defendant-Appellee.*

No. 99-6604

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 98-02849—Jon Phipps McCalla, District Judge.

Argued: June 7, 2001

Decided and Filed: November 6, 2001

Before: KENNEDY, SILER, and CLAY, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Bruce S. Kramer, BOROD & KRAMER, Memphis, Tennessee, for Appellant. W. O. Luckett, Jr., ROSSIE, LUCKETT, PARKER & LAUGHLIN, Memphis, Tennessee, for Appellee. **ON BRIEF:** Bruce S. Kramer, Elaine Sheng, P. Bryan Mauldin, BOROD & KRAMER,

Memphis, Tennessee, for Appellant.  W. O. Luckett, Jr., Lorrie K. Ridder, ROSSIE, LUCKETT, PARKER & LAUGHLIN, Memphis, Tennessee, for Appellee.

KENNEDY, J., delivered the opinion of the court, in which CLAY, J., joined.  SILER, J. (pp. 16-18), delivered a separate opinion concurring in part and dissenting in part.

———————

**OPINION**

———————

KENNEDY, Circuit Judge.   Plaintiff Roger McClung appeals from the grant of summary judgment to defendant Wal-Mart Stores, Inc. in this action alleging that Wal-Mart was negligent in failing to provide adequate security for its patrons on its premises, leading to the kidnaping, rape and murder of plaintiff's wife, Dorothy McClung.  The district court granted defendant Wal-Mart's motion for summary judgment, concluding that there was no genuine issue of material fact appropriate for jury review.  Plaintiff-appellant now raises three issues on appeal.  First, plaintiff asserts that the district court incorrectly construed the liability standard applicable to defendant Wal-Mart.  Secondly, plaintiff claims that the district court incorrectly excluded hearsay evidence.  Lastly, plaintiff argues that he has offered sufficient evidence to raise a question of material fact for a jury.  For the reasons outlined below, we reverse in part the judgment of the district court and deny defendant's motion for summary judgment.

**I.**

On September 8, 1990, Dorothy McClung's body was found in Crittenden County, Arkansas.  Later that day, police apprehended Joseph Alexander Harper, II and Harper confessed, in a taped conversation, to abducting Mrs. McClung from the parking lot of the Delta Square Shopping Center in Memphis, Tennessee on September 7, 1990.  Harper stated that he abducted Mrs. McClung in her car from the parking lot of a "Circus City" because he wanted her car.

whether McClung was abducted from the Delta Square Shopping Center parking lot. It seems obvious that she was abducted from the larger parking lot, but that may be up to the jury to determine.

Circuit City, an electronics and music store, was located in the Delta Square Shopping Center in Memphis. A Wal-Mart store was also located in the Delta Square Shopping Center. Receipts from the Delta Square Wal-Mart store were found with Mrs. McClung's body, showing that she made purchases at 11:57 a.m. and 12:16 p.m on September 7. The items she purchased were also found with her body.

In addition to the September 8, 1990 statement, Harper made two other statements detailing the kidnaping, rape and murder of Mrs. McClung. On September 20, 1990, Harper made a statement to police including the following:

> [I] walked over to the Circuit City and the Wal-Mart, the nearest store, and I seen this lady, and that's when I thought I should get her car 'cause that's the same one I had before.[1] So when she came out the store, she got in the car and I got in right behind her, and I told her to keep driving. So we drove for a little white [sic] 'till we got to this church. Then we went behind the church and people were looking suspicious at us 'cause the way we were seated in the car. So that's when I told, I said get out that I could place her in the trunk. And I placed her in the trunk, and then I went back to the wrecker company, and I picked up my stuff out the other Volvo. So that took a little while, and then I went back and got in the Volvo and got on Interstate 40 West, and that's when I started heading towards Little Rock, Arkansas. And as soon as I got over the bridge, that's when I thought to drop her off. And I went down a dirt road, a long dirt road by a farm and I took her outta the trunk, and she was breathing like she had respiratory problems. So, that's when I began to have sexual intercourse with her. She was still alive, and I may have penetrated her anal, her anal cavity but I didn't realize it if I did. And

---

[1]Harper had previously stolen a 1987 Volvo in Chattanooga, Tennessee which he drove to Shelby County. Harper was then in a car accident and, following the accident, the 1987 Volvo was no longer drivable and was towed to Farrell Wrecker Company in Shelby County.

that's when I placed her bags right next to her, and she was still breathing the same way she was, and her eyes were open, and then I left and got back on Interstate 40 and proceeded to go towards Little Rock, Arkansas.

(J.A. 937.) The record indicates that Harper checked into the wrecker company impound lot at 1:18 p.m. on September 7 (J.A. 593) with Mrs. McClung already in the trunk of the car. Harper ultimately pleaded guilty to the kidnaping, aggravated rape and murder of Mrs. McClung. At the guilty plea proceeding, Harper affirmed the above version of the story by answering "yes" to descriptions of the events posed by the assistant attorney general. In particular, the assistant attorney general stated that "Mr. Harper confessed that . . . on that Friday morning he had in fact at the Wal-Mart parking lot in Memphis, Shelby County, Tennessee, used a weapon, a gun, to kidnap Mrs. Dorothy McClung, had taken her, had robbed her, and had raped her, while he had her in his custody by virtue of the weapon." (J.A. 611.) The district judge asked Harper "Is what the Attorney General said about the facts of these cases true?" and Harper responded, "Yes, sir." (J.A. 613.) After being sentenced to life in prison, Harper committed suicide while in custody. Harper is thus unavailable as a witness.

Eleven retail stores comprise the Delta Square Shopping Center. Wal-Mart was the anchor store. Circuit City was also a tenant, and was located approximately 100 yards from the Wal-Mart store. Under Wal-Mart's lease with Delta Square, Wal-Mart had non-exclusive use of the common areas, including the entire shopping center parking lot, shared with all other tenants of Delta Square. Wal-Mart's lease also provided for a particular ratio of spaces and lighting specifications for "the portion of the parking lot serving [Wal-Mart]" as well as provisions that the lighting for that portion of the parking lot would be wired into the store and that the maintenance and electricity for those lights were the responsibility of Wal-Mart.

Moreover, I disagree with the majority that *McClung v. Delta Square Ltd. Partnership*, 937 S.W. 2d 891 (Tenn. 1996), stands for the proposition that a tenant in a large shopping center owes a duty of care to all of its customers who might park at the far end of a common parking lot serving multiple tenants of the shopping center. I realize that the court in *McClung* set out a new liability standard for store owners, but I do not think that it extended liability as broadly as the majority feels that it did. The strongest language in *McClung* to support Wal-Mart's liability is where the court indicates that a business has "a duty to take reasonable steps to protect customers . . . if the business knows, or has reason to know, . . that criminal acts against its customers on its premises are reasonably foreseeable, . . ." *Id.* at 902. This language does not address the key issue, which remains, and which was not answered in *McClung*: what are the "premises"? In my opinion, there is no Tennessee authority as to this issue. I do not think that Tennessee courts would hold every tenant liable in a mega shopping center for criminal acts by third parties committed at the far end of the parking lot against one of its customers. Therefore, in a case such as this, where the place of abduction is unclear except that it likely occurred in the common parking lot, recourse may be sought against the landlord, the mall owner. McClung sued the landlord, as related in footnote 2 of the majority opinion, and obtained a judgment against it. Accordingly, I would uphold the decision by the district court that the plaintiff must show that McClung was abducted from the Wal-Mart portion of the Delta Square Shopping Center parking lot before Wal-Mart could be held liable.

On the third point, whether the district court erred in concluding that the evidence presented by McClung did not present a genuine issue of material fact for a jury to consider against Wal-Mart, I would uphold the decision by the district court, if my conclusion, that Wal-Mart could only be liable if McClung had parked in its portion of the parking lot, is the law of the case. On the other hand, if the majority view is the prevailing one, then the majority is correct that there would be a genuine issue of material fact for the jury to consider as to

---

## CONCURRING IN PART, DISSENTING IN PART

---

SILER, Circuit Judge, concurring in part and dissenting in part. I concur with the majority's conclusions on the admissibility of the statements made by Joseph Harper, the assailant. Thus, I agree that his statement in court was not admissible but that his first two statements made to investigators may be admissible because they are statements against a penal interest, subject to the determination by the trial court that the two statements were reliable.

However, I depart from the majority in its determination that the district court erred in finding that Wal-Mart could not be liable unless the jury found that the victim, Dorothy McClung, was abducted from the Wal-Mart section of the Delta Square Shopping Center parking lot. Admittedly, the district court relied upon a worker's compensation case, *Lollar v. Wal-Mart Stores, Inc.*, 767 S.W. 2d 143 (Tenn. 1989), for its definition of "premises." That, obviously, is not strong authority in a case such as this. As in most states, Tennessee courts construe worker's compensation statutes liberally, with any reasonable doubt as to whether an injury was caused by work is to be resolved in favor of granting relief to the injured employee. *See Reeser v. Yellow Freight Systems, Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997) ("Worker's Compensation Act must be liberally construed and any reasonable doubt as to whether an injury was caused by work, must be resolved in favor of the employee."); *Harman v. Moore's Quality Snack Foods, Inc.*, 815 S.W.2d 519 (Tenn. Ct. App. 1991) ("In keeping with the liberal construction accorded the Worker's Compensation statute, the term 'accident arising out of and in the course of employment' has been construed by our courts beyond the limited language contained in the statute."). Therefore, a worker's compensation definition of premises would seem to encompass more territory than would a definition based upon general tort liability.

---

In September 1991, decedent's husband, Roger McClung (McClung), brought this case in Tennessee state court against Delta Square Shopping Center, Samuel Longiotti, and Wal-Mart Stores, Inc. alleging that defendants were negligent in failing to provide adequate security for patrons shopping on their premises. The Tennessee trial court granted summary judgment in favor of all defendants and the state court of appeals affirmed. The Tennessee Supreme Court reversed, however, and remanded the case for trial. *McClung v. Delta Square, et. al.*, 937 S.W.2d 891 (Tenn. 1996). Plaintiff McClung then filed a notice of non-suit pursuant to Rule 41 of the Tennessee Rules of Civil Procedure and re-filed his complaint in the United States District Court for the Western District of Tennessee. Prior to trial, the district court granted summary judgment to defendant Wal-Mart, holding that there was no evidence that plaintiff's wife was abducted from that portion of the shopping center's parking lot which constituted Wal-Mart's premises. Plaintiff now appeals the district court's grant of summary judgment in favor of defendant Wal-Mart.[2]

## II.

This court reviews an order of a district court granting summary judgment de novo. *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor

---

[2]McClung proceeded to trial in the district court against the remaining defendants and judgment was entered in his favor upon a jury verdict. That judgment was the subject of a cross-appeal by those defendants in case no. 99-6605. On June 27, 2000 the district court entered an order granting the parties' motion for voluntary dismissal pursuant to Fed. R. App. P. 42.

of the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and the judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In addition, upon review of the district court's decision, this court is limited to considering the evidence which was submitted to the district court. *Markowitz v. Campbell*, 190 F.3d 455, 463 (6th Cir. 1999).

## A.

Plaintiff first challenges the district court's ruling that in order to satisfy the legal standard for liability, a jury would have to find that Mrs. McClung was abducted from the "Wal-Mart section" of the Delta Square Shopping Center parking lot. Plaintiff argues that the district court incorrectly construed the Tennessee legal standard for determining whether Wal-Mart had a duty to provide reasonable security for Mrs. McClung. In order to prevail on a negligence claim, a plaintiff "must prove: (1) a duty of care owed by defendant to plaintiff; (2) conduct falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 894 (Tenn. 1996). The question of whether a duty of care is owed by defendant Wal-Mart to plaintiff is a question of law for the court to decide. *Id.* The question is governed by Tennessee state law. On the specific facts in this case, the Tennessee Supreme Court overruled the previous Tennessee liability standard and brought about a significant shift in the duty required of a business to its customers for the criminal acts of third parties occurring on the store premises. *Id.* at 903. The Tennessee Court held that:

A business ordinarily has no duty to protect customers from the criminal acts of third parties which occur on its premises. . . . However, a duty to take reasonable steps to protect customers arises if the business knows, or has reason to know, either from what has been or should

customers to survive summary judgment. The Tennessee Supreme Court held that:

Considering the number frequency, and nature of the crimes reported to police, management's acknowledgment of security problems, and other evidence in the record, we conclude that the proof would support a finding that the risk of injury to plaintiff's wife was reasonably foreseeable. Of course, foreseeability alone does not establish the existence of a duty. On remand, the magnitude of the potential harm and the burden imposed upon defendants must also be weighed to determine the existence of a duty.

*McClung*, 937 S.W.2d at 904. Thus, the Tennessee Supreme Court found the evidence of foreseeability sufficient to withstand summary judgment. Given the evidence presented by plaintiff and the broad new Tennessee standard for determining business owner liability for injuries caused by third parties but occurring on the business premises, we further heed the Tennessee Supreme Court's ruling that "the question of duty and of whether defendants have breached that duty by taking or not taking certain actions is one for the jury to determine based upon proof at trial." *McClung*, 937 S.W.2d at 904. We therefore conclude that there is a genuine issue of material fact appropriate for jury review.

## III.

For the foregoing reasons, we affirm in part and reverse in part. We deny defendant's motion for summary judgment and remand the case to the district court for further consideration consistent with this opinion.

checked into the impound lot with Mrs. McClung already in the trunk of the car at 1:18 p.m on September 7.  In addition, two of Harper's statements as to the location of the abduction appear to be admissible, as discussed above in Part B of this opinion.  Although the district court correctly concluded that this evidence was not sufficient to permit a reasonable jury to conclude that Mrs. McClung was abducted from the particular section of the parking lot in front of Wal-Mart, we affirm the district court's finding that the evidence is sufficient to permit a reasonable jury to conclude that the abduction took place somewhere in the Delta Square Shopping Center parking lot.[3]

Thus, we conclude that plaintiff has raised a genuine issue of fact as to whether the abduction occurred on defendant's premises.  Similarly, plaintiff has raised sufficient evidence as to the foreseeability to defendant of the harm to store

---

[3] We acknowledge that, as the dissent points out, *Lollar v. Wal-Mart Stores, Inc.*, 767 S.W.2d 143 (Tenn. 1989), is a worker's compensation case, where courts are perhaps more liberal in determining whether an injury is caused by work.  Nonetheless, there is little other Tennessee authority available with respect to what constitutes the "premises" under the *McClung* liability standard.  In *McClung*, the Tennessee Supreme Court was addressing this very case and did not attach any importance to distinctions between various portions of the mall parking lot.  Rather, the court treated Wal-Mart and its co-defendants in precisely the same manner, even though one of the co-defendants owned the entire shopping center, while Wal-Mart was only a single tenant.  In a later Tennessee case, *Staples v. CBL & Assoc., Inc.*, 15 S.W.3d 83 (Tenn. 2000), the court commented on a portion of the *McClung* opinion:  "[I]n *McClung*, we recognized that 164 criminal incidents had occurred on the relevant premises within the seventeen month period preceding the plaintiff's injury. . . . we acknowledged that '[a]s a practical matter, the requisite degree of foreseeability essential to establish a duty to protect against criminal acts will almost always require that prior instances of crime have occurred on or in the immediate vicinity of the defendant's premises." *Id.* at 91, n.3 (alteration in original).  The *McClung* court examined the number of incidents occurring on or near the entire parking lot, despite the fact that defendant Wal-Mart was only one tenant.  In view of the statements made in these cases, we conclude that the Tennessee Supreme Court would not distinguish among the various parts of the mall parking lot when determining Wal-Mart's duty to its customer in this case.

---

have been observed or from past experience, that criminal acts against its customers on its premises are reasonably foreseeable, either generally or at some particular time.

*Id.* at 902.  The Court explained that "the crucial inquiry is the foreseeability of a criminal act occurring on defendant's premises." *Id.* at 899.

On defendant's motion for summary judgment, the federal district court reviewed the Tennessee standard outlined in *McClung*, 937 S.W.2d 891 (Tenn. 1996).  Correctly, the district court acknowledged that the critical first question was what constituted defendant's premises.  The district court explained that:

> Plaintiff bears the burden of proving that Mrs. McClung was abducted from Wal-Mart's premises--if she was not, then no liability attaches to Wal-Mart in this case. . . . The proof indicates that Mrs. McClung was abducted from the Delta Square Shopping Center parking lot.  The first question therefore is whether any part of the Delta Square Shopping Center parking lot may be considered part of Wal-Mart's premises.

(J.A. 791.)  Although the Tennessee Supreme Court did not explicitly define "premises" in *McClung*, it did determine that plaintiff would survive defendant's motion for summary judgment where the abduction took place in defendant's parking lot.  The Tennessee Court explained that it was establishing "the appropriate test for determining the duty of care in cases involving business premises liability for the acts of unknown third parties." *McClung*, 937 S.W.2d at 903.  The Tennessee Court stated that "plaintiff's wife was returning to her car in defendants' parking lot when she was accosted," *Id.* at 903, and ultimately reversed the trial court's grant of summary judgment to defendants.  The Tennessee standard set forth in *McClung* for determining liability in this context only applies to acts of third parties which occur on a business' premises.  The Tennessee Court thus effectively

held that the parking lot of a store constitutes part of the store's premises.

We must determine, however, whether defendant's premises includes the entire Delta Square Shopping Center parking lot or only the smaller Wal-Mart designated portion of the lot. Plaintiff argues that the entire Delta Square Shopping Center parking lot constitutes part of defendant's premises because, under the terms of its lease, defendant Wal-Mart had a "non-exclusive right . . . to use in common with the . . . other stores in the Shopping Center" the entire shopping center parking lot. (J.A. 644.) Wal-Mart argues that its "premises" included only the smaller portion of the parking lot which is subject to the Wal-Mart specific lighting and space ratio agreements in the lease.

The district court concluded that the Wal-Mart premises included only the smaller "Wal-Mart designated" portion of the lot. In reaching that conclusion, the district court relied on a Tennessee worker's compensation case, *Lollar v. Wal-Mart Stores, Inc.*, 767 S.W.2d 143 (Tenn. 1989), for the definition of premises. We find, however, that the district court erred in its conclusion. In *Lollar*, the Tennessee Supreme Court held that, for purposes of a worker's compensation claim, an employer-provided employee parking area is part of the employer's premises, regardless of whether customers or the general public may also park there. *Id.* at 150. Extending *Lollar* to the present issue of liability owed to customers for acts of third parties requires a holding that if a storeowner offers parking to its customers, that parking area is part of the store premises regardless of who else might also park there. The provision of parking areas for customers creates a relationship between the storeowner and customer from which a duty may arise.

In the present case, Wal-Mart had rights to the entire Delta Square Shopping Center parking lot and Wal-Mart's customers were free to park anywhere in the lot. Nothing indicated to customers that Wal-Mart had any special parking area or extended a special invitation to park in a particular

against Harper's interest to admit that the abduction took place in Tennessee because he could be extradited from Arkansas to Tennessee and then tried for his crime.

In addition to satisfying the statement against interest exception, Harper's statements must satisfy the general hearsay reliability standard. We see no reason to find Harper's first two statements unreliable. Although it is not entirely clear, it appears that the district judge found the statements reliable when he concluded that "[t]he proof indicates that Mrs. McClung was abducted from the Delta Square Shopping Center parking lot." (J.A. 791.) In any event, the district judge is not foreclosed from considering the reliability of Harper's first two statements on remand.

## C.

Plaintiff's final claim is that the district court erred in concluding that the evidence presented by plaintiff did not raise a genuine issue of material fact for a jury to consider. Rather, plaintiff argues that the district court impermissibly weighed the evidence and usurped the role of the jury.

Employing the Tennessee liability standard outlined in *McClung*, we must determine whether a reasonable jury could conclude that Mrs. McClung was abducted from the Delta Square Shopping Center parking lot. If a jury could so conclude, we must then determine, based on the Tennessee standard, whether a reasonable jury could conclude that "the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *McClung*, 937 S.W.2d at 901.

The district court found that "[t]he proof indicates Mrs. McClung was abducted from the Delta Square Shopping Center parking lot." (J.A. 791.) Plaintiff offered the Wal-Mart receipts showing purchases at 11:57 a.m. and 12:16 p.m. on September 7 and the Wal-Mart shopping bags and purchases found with Mrs. McClung's body as evidence to support that conclusion. The record shows that Harper

premises, defined here as including the entire Delta Square parking lot.

In his September 8 statement to police, Harper stated that he abducted Mrs. McClung from a "Circus City" parking lot in Memphis. (J.A. 470.) On September 20, Harper stated to police that he "walked over to Circuit City and the Wal-Mart, the nearest store, and I seen this lady, and that's when I thought I should get her car. . . . So when she came out of the store, she got in her car and I got in right behind her." (J.A. 937.) Each of these statements was made within a general admission of guilt, but under *Williamson*, "Rule 804(b)(3) cover[s] only those declarations or remarks within the confession that are individually self-inculpatory." 512 U.S. at 599. Thus, the question is whether Harper's statements as to his location subjected him to sufficient penal liability that a reasonable person would not have made the statements unless believing them to be true. *Id.* "[W]hether a statement is self-inculpatory or not can only be determined by viewing it in context." *Id.* at 603.

Harper's statements place him at the same location as the victim, as shown by the Wal-Mart cash register receipts, and are evidence of his opportunity and intent to commit the crime. These statements were contrary to Harper's penal interest and there is no reason to suggest that Harper would have made these statements without believing them to be true. The Supreme Court in *Williamson* offered a similar example of admissible evidence. The Court commented that, "'I was robbing the bank on Friday morning,' coupled with someone's testimony that the declarant and the defendant drove off together Friday morning, is evidence that the defendant also participated in the robbery." *Id.* at 603. Similarly, we find that, coupled with other evidence of Mrs. McClung's presence at the Delta Square Shopping Center, Harper's statements that he abducted Mrs. McClung from the Circuit City and Wal-Mart parking lot satisfy the statement against interest exception to the hearsay rule as evidence that the abduction occurred on Wal-Mart's premises. Additionally, these statements were made in Arkansas. It was

part of the shopping center lot. Thus, Wal-Mart's relationship with its customers was based on an invitation to park anywhere in the Delta Square Shopping Center parking lot in order to shop at Wal-Mart. For this reason, we conclude that the district court erred, and that the Tennessee Supreme Court intended its new liability standard to apply anywhere on Wal-Mart's premises, which included the entire Delta Square Shopping Center parking lot. As a result, while plaintiff must show that a reasonable jury could conclude that Mrs. McClung was abducted from the Delta Square Shopping Center parking lot, plaintiff need not show that Mrs. McClung was abducted from any particular area within the parking lot.

### B.

Plaintiff claims that the district court erred by excluding statements made by Harper detailing the abduction and kidnaping of Mrs. McClung. Plaintiff originally wished to use these statements to show that Mrs. McClung was abducted from the specific Wal-Mart portion of the parking lot. In particular, appellant points to Harper's guilty plea proceeding in which he affirmed the assistant attorney general's statement that "Mr. Harper confessed that he had in fact . . . at the Wal-Mart parking lot in Memphis, Shelby County, Tennessee, used a weapon . . . to kidnap Mrs. Dorothy McClung." (J.A. 611, 613.) Based on the conclusion reached above that defendant's premises include the entire Delta Square Shopping Center parking lot, plaintiff need only show that Mrs. McClung was abducted from somewhere in the Delta Square Shopping Center parking lot. For that purpose, plaintiff seeks admission of each of Harper's statements referring to his location at the time of the abduction.

Harper is now deceased and his statements are inarguably hearsay. Plaintiff argued before the district court that the statements were admissible, however, under the statements against penal interest exception to the hearsay rule. A statement against interest is:

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Fed. R. Evid. 804(b)(3).  Only those specific statements within a general confession which are self-inculpatory are admissible under Rule 804(b)(3), however.  The Supreme Court has stated that:

In our view, the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory.  The district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else.

*Williamson v. United States*, 512 U.S. 594, 600-01 (1994).

The district court concluded that Harper's sworn affirmance during his guilty plea hearing that he kidnaped Mrs. McClung from the "Wal-Mart parking lot" as opposed to the Circuit City parking lot was not in itself a statement against interest because it did not subject Harper to any additional liability which he did not already face because of his heinous acts.  The district court explained that:

[A] reasonable person in Harper's position at the time he affirmed the Assistant Attorney General's recitation would have considered immaterial and irrelevant from which specific portion of a shopping center parking lot he carjacked Mrs. McClung.  Harper's admission of the abduction, rape and murder were statements against Harper's interest at the time of the guilty plea proceedings.  It is truly inconceivable to believe that Harper would have corrected the Assistant Attorney

General's recitation of the events of Mrs. McClung's abduction, rape and murder in order to clarify where exactly in the parking lot he kidnapped Mrs. McClung.

(J.A. 794.)

We agree with the district court that Harper's statements in his guilty plea proceedings regarding the exact location of the carjacking do not satisfy the statement against interest exception to the hearsay rule.  None of the factors permitting hearsay statements under the statement against interest rule apply to his statement.  We conclude, more basically, that Harper's statement at the guilty plea proceeding does not satisfy the reliability standard for hearsay evidence.  Harper generally affirmed the assistant attorney general's entire statement which included a number of things that Harper would have had no way of knowing.  For example, the assistant attorney general's description of the facts included a statement that Mr. McClung spoke to his wife at 11:30 a.m. on the morning of the abduction and a statement regarding phone calls received by the Crittenden County Sheriff's office. (J.A. 170.)  Harper's single "yes" answer affirmed the assistant attorney general's entire statement, yet he could not possibly have known whether many of these events occurred.  As the district court held, there is no reason to believe that, in this context, Harper would have corrected an incorrect statement by the assistant attorney general as to the location of the abduction.  Harper's simple "Yes, sir" response when asked whether the assistant attorney general's recitation of the facts was accurate is not sufficiently reliable to be admissible.  We, therefore, affirm the district court's holding that Harper's statement at the guilty plea proceeding is not admissible.

Harper's other two statements, made on September 8 and September 20, placed Harper outside "Circus City" and outside both Circuit City and Wal-Mart, respectively. Based on the Tennessee liability standard outlined above, we must consider whether either of these statements are admissible to show that Mrs. McClung was abducted from Wal-Mart's